Guillermo V. FRANCESKIN, Plaintiff–Counter–Defendant–Appellant,

v.

CREDIT SUISSE, Defendant–Counter–Claimant–Appellee,

Lloyds Bank, Defendant–Appellee,

Dr. Carlos Meischenguiser, Executor of The Estate of Eugenio Durante, Interpleader–Counter–Defendant–Appellee,

Luis Durante, Vincente Durante, Francisco Durante, Nelida Durante, Marta Durante, Beatriz Durante, Antonia F. Caliguri, Nilda De La Cruz Mendoza and Victoria Ana Licen, Counter–Defendants.

Docket No. 98–9376

United States Court of Appeals, Second Circuit.

Argued: Aug. 26, 1999

Decided: June 5, 2000

Fernando Koatz, Gleason & Koatz (John P. Gleason, of counsel), New York, New York, for Plaintiff–Counter–Defendant–Appellant.

Allan N. Taffet, Paradise, Alberts & Fisher LLP (Pierre M. Gentin, Credit Suisse First Boston Corporation Legal and Compliance Department, of counsel), New York, New York, for Defendant–Counter–Claimant–Appellee.

Robert I. Bodian, O'Sullivan, Graev & Karabell, LLP (Joan Wharton, of counsel), New York, New York, for Defendant–Appellee.

George R. Brown V, Stairs Dillenbeck Finley & Mearle (Pierre F.V. Merle, John J. Finley, of counsel), New York, New York, for Interpleader–Counter–Defendant–Appellee.

Before: WINTER, Chief Judge, KEARSE, and STRAUB, Circuit Judges.

WINTER, Chief Judge:

Guillermo V. Franceskin appeals from Judge Knapp's order granting summary judgment to appellees Credit Suisse ("CS"), Lloyds Bank ("Lloyds"), and the Executor of the estate of Eugenio Durante ("the Executor"). A judgment for approximately $530,000 held by CS was awarded to the Executor in an interpleader proceeding. The issues we address on this appeal concern diversity of citizenship jurisdiction, or the lack thereof.

The problem in this case is not uncommon. Plaintiff's counsel has not met the requisites of pleading or proving diversity jurisdiction. Too often we hear appeals in cases in which diversity has not been properly alleged in the complaint and the often extensive proceedings in the district court have not clarified matters. Sometimes, the omission was one that should have

been obvious to any lawyer who researched well-established principles of diversity jurisdiction before alleging it. *See, e.g., Lee v. Coss,* 201 F.3d 431, 1999 WL 1314741, at *1 (2d Cir. Dec.29, 1999) (unpublished table decision) (addressing jurisdictional defect due to plaintiff's alleging diversity of residence, not diversity of citizenship) [1]; *Canedy v. Liberty Mutual Ins. Co.,* 126 F.3d 100, 102–03 (2d Cir.1997) (plaintiff's allegation that she was "resident" of Virginia insufficient to establish diversity jurisdiction over claims against Massachusetts corporation); *Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269, 273–74 (2d Cir.1994) (diversity jurisdiction lacking over claim where amount in controversy was alleged to be "in excess of $15,000," not then-amount-in-controversy minimum of $50,000); *International Shipping Co. v. Hydra Offshore, Inc.,* 875 F.2d 388, 390 (2d Cir.1989) (affirming Rule 11 sanctions against attorney for bringing jurisdictionally defective complaint on alien corporation's behalf against another alien corporation). Other times, the defect is less obvious. *See, e.g., Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 68–69 (2d Cir.1990) (complete diversity lacking where three plaintiffs and several partners in defendant-law firm were United States citizens domiciled abroad and therefore were neither "citizens of a State" or "citizens or subjects of a foreign state" within the meaning of 28 U.S.C. § 1332(a)).

In many such cases, diversity of citizenship sufficient to support federal jurisdiction actually exists, and counsel for the defendants do not bother to move to dismiss because leave to amend will almost surely be granted and the defect cured. However, the failure to put the basis for jurisdiction on the record—say, through a stipulation—may lead to unnecessary proceedings on appeal. *See, e.g., Canedy,* 126

F.3d at 102–03 (addressing merits of appeal after having remanded to ascertain that plaintiff was citizen and not just resident of Virginia). Sometimes, when no party recognizes the failure to allege diversity of citizenship properly, there may be serious consequences. *See, e.g., Signal Hill, N.V. v. Altmann,* 104 F.3d 350, 1996 WL 537916, at *1–*2 (2d Cir. Sept.20, 1996) (unpublished table decision) (*sua sponte* remanding appeal from default judgment where alien plaintiffs improperly alleged defendant "is a citizen of the United States and maintains a residence" in New York, without alleging state of defendant's citizenship).

In the present matter, the original complaints stated that CS and Lloyds were "organized under the laws of the state of New York," allegations essential to a proper assertion of diversity jurisdiction in each case. CS denied the allegation as to its state of incorporation in its answer but did not move to dismiss. Subsequent pleadings made it clear that CS is a Swiss corporation. Counsel for CS surely knew that diversity was lacking but apparently decided to see how things went on the merits, holding open the option to raise the lack of jurisdiction at any time. Lloyds never answered the complaint against it, and counsel for Lloyds may have followed a similar strategy with regard to a potential jurisdictional issue.

What the present case and most of those cited above have in common is the waste of litigants' and courts' resources that could have been avoided by the parties or court examining the pleadings and taking the simple steps of establishing diversity jurisdiction or dismissing for lack of it. The present cases have proceeded to judgment on the merits in the district court, even though the pleadings clearly revealed a jurisdictional problem in the action against

---

1. Here and elsewhere in this opinion, we cite to cases decided by summary order solely to identify instances in which diversity jurisdiction was improperly alleged in matters coming before this court. We cite them only as facts rather than as precedents. *Cf.* Local Rules for the Second Circuit Relating to the Organization of the Court 0.23 ("Since [dispositions by summary order] do not constitute formal opinions of the court ... they shall not be cited or otherwise used in unrelated cases before this or any other court.").

CS and the interpleader proceeding. As a result, we must vacate the judgments for CS and the Executor because federal courts lack subject matter jurisdiction over state law claims among aliens. We remand the action against Lloyds for a determination whether diversity jurisdiction is also lacking in that matter.

## BACKGROUND

Franceskin and Durante are citizens of Argentina who, in 1983, opened joint checking accounts in New York branches of CS and Lloyds. From the opening of the accounts until Durante's death in April 1997, all correspondence from the banks regarding these accounts was directed to Durante only, at Durante's request. During this time, Franceskin never communicated with either bank regarding the joint accounts.

On October 11, 1992, Durante requested in writing that Lloyds transfer the balance of the Lloyds joint account to another Lloyds account in Durante's name alone. Lloyds honored this request on November 19, 1990 and closed the joint account. Also on October 11, 1992, Durante requested that CS remove Franceskin as a title holder to the joint account in that bank. Sometime between October 11, 1990 and March 29, 1992, CS carried out Durante's instructions by amending the title to the joint account to reflect that Durante was the sole owner.

Durante died on April 19, 1997. Shortly thereafter, Franceskin contacted CS and Lloyds to claim a survivorship interest in the balances of what he claims to have thought were still-existing joint accounts. CS told Franceskin that he was no longer a title holder to the account in which Franceskin claimed an interest, and Lloyds informed Franceskin that the joint account in that bank had been closed in November 1990.

Demanding the balances in the pertinent accounts—approximately $530,000 in CS and $520,000 in Lloyds—appellant filed the instant actions against CS and Lloyds, asserting state law claims for breach of contract, conversion, and negligence. Each complaint asserted diversity of citizenship as the basis for subject matter jurisdiction, alleging that the particular defendant bank was a New York corporation. CS thereafter interpleaded the Executor and various beneficiaries under Durante's will, all citizens of Argentina. The Executor interposed a state law claim in interpleader against CS for the $530,000 deposit in Durante's formerly jointly held account.

Both CS and Lloyds moved for summary judgment, with the Executor joining both motions. Lloyds argued that it did not breach its contract with appellant, that N.Y. Banking Law § 675(a) absolved it of liability in tort for the transfer, and that appellant's claims were all time-barred. CS argued that appellant's claims against it were time-barred. Appellant opposed the summary judgment motions and cross-moved for leave to file amended complaints. The proposed amended complaint omitted the allegation that CS was a New York corporation and in fact admitted that CS was a Swiss corporation.

The district court granted the summary judgment motions, denied appellant's cross-motion, and granted judgment to the Executor in the amount of the deposit held in Durante's name by CS. The court thereafter consolidated the actions against CS and Lloyds *nunc pro tunc,* and this appeal followed.

## DISCUSSION

Neither the parties nor the district court addressed the court's subject matter jurisdiction. Accordingly, we raise the issue *sua sponte. See FDIC v. Four Star Holding Co.,* 178 F.3d 97, 100 n. 2 (2d Cir.1999) ("[T]he Court may examine subject matter jurisdiction, *sua sponte,* at any stage of the proceeding." (citing *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990))).

We discuss the appellees separately.

a) *Credit Suisse*

▆ Appellant's claims against CS all arise under state law. Thus, we have subject matter jurisdiction over these claims only if appellant and CS are of diverse citizenship. The diversity jurisdiction statute provides in relevant part:

(a) [t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy ... is between—

...

(2) citizens of a State and citizens or subjects of a foreign state[.]

28 U.S.C. § 1332(a)(2). Appellant, as noted, is a citizen of Argentina. CS, a corporation, is "deemed ... a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *Id.* § 1332(c)(1).

Appellant's complaint alleged that CS is "organized under the laws of the state of New York," but CS denied this allegation in its answer, implicitly challenging the existence of diversity jurisdiction. Moreover, CS's counterclaim in interpleader alleged "[CS] is a corporation organized and existing under the laws of Switzerland. [CS] maintains a place of business in the United States in New York." In his proposed amended complaint, appellant himself alleged that CS is a Swiss corporation. Finally, the parties agreed at oral argument that CS is an alien corporation. Accordingly, diversity jurisdiction cannot be founded on CS's place of incorporation.

▆ The principal-place-of-business basis for diversity jurisdiction is also unavailing. "[E]ven if a corporation organized under the laws of a foreign nation maintains its principal place of business in a State, and is considered a citizen of that State, diversity i[s] nonetheless defeated if another alien party is present on the other

side of the litigation." *International Shipping,* 875 F.2d at 391 (affirming Rule 11 sanctions against lawyer for bringing jurisdictionally defective complaint on alien's behalf against alien corporation alleged to have principal place of business in New York); *see also Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786, 790 (2d Cir.1980) (diversity jurisdiction lacking over claims by Venezuelan corporation against Swiss corporation with New York principal place of business; "the fact that alien parties were present on *both* sides would destroy complete diversity"). Even if CS's principal place of business were in one of the United States, therefore, "diversity i[s] nonetheless defeated" because appellant is "another alien party ... on the other side of the litigation." *International Shipping,* 875 F.2d at 391.

▆ Finally, "pendent-party" jurisdiction, codified at 28 U.S.C. § 1367(a), does not provide jurisdiction either. That doctrine confers supplemental jurisdiction over "claims that are so related to claims in the action within" the original jurisdiction of the court where the related claims "include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). Even if we assume that we have diversity jurisdiction over appellant's claims against Lloyds, those claims were brought separately and are legally distinct, albeit now consolidated for purposes of convenience. As a result, the supplemental jurisdiction statute, which applies only to "related claims in *the* action," 28 U.S.C. § 1367(a) (emphasis added), cannot supply the missing jurisdictional link. *Cf. Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934) ("The policy of the [diversity] statute calls for its strict construction."); *Romanella v. Hayward,* 114 F.3d 15, 16 (2d Cir.1997) (per curiam) (noting "requirement that we strictly construe the diversity statute").[2]

**2.** Moreover, even assuming that the actions are one and the same, that appellant's CS claims are "so related" to his Lloyds claims, and that Lloyds is a New York corporation, Section 1367(b) would still destroy supple-

mental jurisdiction over the CS claims. Section 1367(b) provides that federal courts do not have supplemental jurisdiction over pendent-party claims where original jurisdiction is "founded solely on" diversity and the pen-

Therefore, for jurisdictional purposes, there is no diversity of citizenship between appellant and CS.

### b) *Executor and Other Interpleader-Counter Defendants*

■ CS interpleaded the Executor and certain Argentine beneficiaries of Durante's will (collectively, the "counter-defendants"), and the Executor made a claim in interpleader to the balance of Durante's CS account. Because appellant, CS, and all of the counter-defendants are aliens, we lack subject matter jurisdiction over the interpleader claims.

CS asserts two bases for jurisdiction over the counter-defendants: rule interpleader and statutory interpleader. The statute provides jurisdiction to federal courts over interpleader actions having "[t]wo or more adverse claimants[ ] of diverse citizenship as defined in [28 U.S.C. § 1332]." 28 U.S.C. § 1335(a)(1). The claimants to the stake held by CS—appellant and the counter-defendants—are all citizens of Argentina, and are not diverse. *See* 28 U.S.C. § 1332(a); *cf. IIT v. Vencap, Ltd.*, 519 F.2d 1001, 1015 (2d Cir.1975) ("Diversity jurisdiction under 28 U.S.C. § 1332 is defeated by the presence of aliens both as plaintiffs and as defendants."). We therefore lack subject matter jurisdiction over the interpleader claims under the statute.

■ We also lack jurisdiction under the rules of civil procedure. The interpleader rule is silent as to jurisdiction. *See* Fed.R.Civ.P. 22. However, a federal court has diversity jurisdiction over an interpleader action brought pursuant to the Rule so long as the stakeholder—here CS—is diverse from every claimant. *See John Hancock Mut. Life Ins. Co. v. Kraft*, 200 F.2d 952, 953 (2d Cir.1953); *see also Travelers Ins. Co. v. First Nat'l Bank of Shreveport*, 675 F.2d 633, 638 n. 9 (5th Cir.1982). Because CS is an alien corporation, there is no diversity as between the claimants and the stakeholder, all of whom are aliens. *See* 28 U.S.C. § 1332(a)(2) (conferring diversity jurisdiction over actions between a "citizen[ ] of a State and citizens ... of a foreign state").

### c) *Lloyds*

■ The complaint against Lloyds alleges that it is "organized under the laws of the State of New York." Given that Lloyds is a well-known bank with British associations, that correspondence in the record from Lloyds uses a letterhead indicating that it is "Registered in England no 2065," and that appellant's similar, erroneous, seemingly unresearched—and now withdrawn—allegations about CS's state of incorporation do not suggest confidence in such allegations, we believe that a proper basis for diversity jurisdiction in the Lloyds case should be established before we reach the merits.

We therefore utilize the procedure set out in *United States v. Jacobson*, 15 F.3d 19, 21–22 (2d Cir.1994), and remand to the district court for it to determine whether

dent party is joined in the action pursuant to, among other rules, Fed.R.Civ.P. 20. *See* 28 U.S.C. § 1367(b) ("In any civil action of which the district courts have original jurisdiction founded solely on section 1332 [diversity], the district courts shall not have supplemental jurisdiction ... over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure...."). If CS and Lloyds were to be considered defendants in the same action, appellant would have to invoke diversity jurisdiction as to all of his state law claims against Lloyds and join CS pursuant to Rule 20, providing that "[a]ll persons ...

may be joined in one action as defendants if there is asserted against them ... any right to relief ... arising out of the same ... series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a). If appellant proceeded in this manner, however, we would have original jurisdiction over the Lloyds claims "founded solely on" diversity, and the CS claims would be "claims ... against persons made parties under" Rule 20. 28 U.S.C. § 1367(b). In such a situation, Section 1367(b) precludes the exercise of supplemental jurisdiction over the CS claims.

there is diversity of citizenship supporting subject matter jurisdiction. The mandate with regard to Lloyds shall issue forthwith. After the district court has made findings as to the existence or non-existence of diversity jurisdiction, either party may restore jurisdiction to this court within 30 days by letter to the Clerk's Office seeking review. The letter will inform the Clerk that the case will be heard by this panel upon letter briefs to be filed according to a schedule set by the Clerk.

## CONCLUSION

We vacate the judgments for Credit Suisse and Dr. Carlos Meischenguiser, Executor of the Estate of Eugenio Durante; and remand with instructions to dismiss appellant's claims against Credit Suisse, Credit Suisse's counterclaims in interpleader, and the Executor's claims in interpleader for lack of subject matter jurisdiction. We remand the judgment for Lloyds Bank for further proceedings in accord with this opinion.